UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

KAREN JAYNES,

          Plaintiff,

v.

CONSUMERS ENERGY CO. et al.,

          Defendants.
_____/

Case Number 12-14304
Honorable Thomas L. Ludington

**OPINION AND ORDER GRANTING DEFENDANT
CONSUMER ENERGY CO.'S MOTION FOR SUMMARY JUDGMENT**

This labor dispute arises out of the relationship between Plaintiff Karen Jaynes, her former employer, Defendant Consumers Energy, and her union, the Utility Workers of America, AFL-CIO Local Union 129. Plaintiff's two-count complaint alleges that Consumers Energy breached its collective bargaining agreement and that Local 129 breached its duty of fair representation.

This type of "hybrid" action is subject to a six-month statute of limitations. *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 172 (1983). Plaintiff discovered, or in the exercise of reasonable diligence should have discovered, the alleged breach of the collective bargaining agreement in January 2012. She did not file suit until August 2012 — eight months later, and two months too late. Consumers Energy is entitled to summary judgment.

**I**

**A**

Plaintiff began working for Consumers Energy 32 years ago. Compl. ¶ 5, attached as Defs.' Notice of Removal Ex. 1. During her employment, she was a member of the Utility Workers of America, AFL-CIO Local Union 129. *See id.* ¶ 3.

Injured on the job, Plaintiff began receiving workers' compensation payments on February 8, 2011. *Id.* ¶ 8. About this time, presumably, Plaintiff also began receiving "supplemental payments" from Consumers Energy pursuant to the collective bargaining agreement. At the time, her "straight-time" rate of pay was $30.46 per hour; her supplemental rate was $3.20 per hour. *Id.* ¶ 11, 17. She had accrued 304 vacation hours. *Id.* ¶ 9.

**B**

Plaintiff's employment was governed by a collective bargaining agreement. The agreement in effect when she was injured was titled "Working Agreement June 1, 2010 to June 1, 2015" ("CBA") Compl. ¶ 4; *see* Consumers Energy's Mot. Ex. B (attaching excerpts of the CBA). Two particular articles of the CBA, articles XII and XIII, are at issue in this case.

**1**

Article XII, "Vacation," provides that a non-probationary employee like Plaintiff is "entitled to vacation from work without loss of his straight-time pay each calendar year as set forth in Section 2 of this Article." CBA art. 12, § 1, *attached as* Consumers Energy's Mot. Ex. B.

Section 2 of Article XII, in turn, enumerates the amount of vacation time non-probationary employees are entitled to receive. *Id.* art. 12, § 2. It establishes a stepped-scale; the amount of time increases based on the employee's length of employment with Consumers Energy. *Id.* (Plaintiff, as noted, had accrued 304 vacation hours when she was injured.)

Section 3 provides that if an employee is receiving Michigan Workers' Disability Compensation Act benefits and supplemental pay benefits (discussed below), half of the unused vacation time will roll over to the following year. *Id.* art. 12, § 3. Half will not. *Id.* Specifically, § 3 provides that if an employee is receiving these two types of benefits, like

Plaintiff, "one-half, to the nearest full day, of the unused portion of the vacation to which [the employee] would be entitled if he were working will be deferred to the next calendar year." *Id*.

Finally, and of particular significance to count one of the complaint, § 4 establishes the rules for "[a]llowances in lieu of vacations." *Id*. art. 12, § 4. In pertinent part, it provides:

> Allowances in lieu of vacations shall be governed by the following rules:
>
> (a) At the time an employee quits, is released for lack of work, is placed on leave of absence to perform military service and he is not expected to return to work from such leave before then end of the calendar year, [or] retires, during a year in which he works or receives sick benefits or supplemental pay or is discharged during the calendar year under consideration, he will be paid an allowance for any unused vacation to which he would be entitled if he were working, including any vacation deferred in accordance with Section 3 and 9 of Article 12.
>
> . . .
>
> (e) Except as provided in Article XII, Section 3 and Subsections (c) and (g) of this Section 4 which shall take precedence over the provisions of this Subsection, an employee will receive an allowance in lieu of any unused portion of the vacation to which he may be entitled which has not been deferred into the next calendar year . . . .
>
> (f) The rate of pay used to calculate the allowances in Subsection (a) . . . will be an employee's regular straight-time rate.
>
> (g) At the time an employee exhausts his supplemental pay benefits in accordance with the provisions of Article XIII, he will be given the following options for any unused portion of the vacation to which he would be entitled if he were working . . .
>
>> (1) To be paid an allowance at such time, or
>>
>> (2) The employee may elect to defer being paid the allowance to a later time in the calendar year in which he exhausts his supplemental pay. . . . The rate of pay used to calculate such an allowance will be the supplemental pay the employee was receiving in accordance with the provisions of Article XIII, Section 3.

*Id*. art. 12, § 4(a), (e)–(g).

To summarize these terms, subsections (a) and (f) provide that an employee will be paid an allowance for his deferred vacation at the straight-time rate if, "during a year in which he works or receives sick benefits or supplemental pay or is discharged during the calendar year under consideration," the employee: (1) quits; (2) is released for lack of work; (3) takes military leave; or (4) retires ("Disability retirement" is not one of the enumerated events in these subsections.)

Subsection (g), in contrast, provides that an employee who "exhausts his supplemental pay benefits in accordance with the provisions of Article XIII" will also be paid an allowance for his deferred vacation. This allowance can be paid as soon as the supplemental pay benefits are exhausted. Or it can be deferred. But, significantly, "The rate of pay used to calculate such an allowance will be the supplemental pay the employee was receiving in accordance with the provisions of Article XIII."

## 2

Article XIII, "Sick Leave Benefits," establishes a right to compensation for employees who are not able to perform their work because of illness or injury, like Plaintiff. CBA art. 13.

Specifically, section 1 establishes compensation for employees who are not "able to perform their work on account of personal illness, or personal injuries not covered by the Michigan Workers' Disability Compensation Act." *Id*. art. 13, § 1. These employees are entitled to "be paid their regular straight-time pay for all lost time in any one fiscal year." *Id*.

Section 2 establishes a number of conditions on "application of half days' sick leave." *Id*. art. 13, § 2.

Finally, and again of particular significance to count one of the complaint, § 3 establishes compensation for employees whose injuries are covered by the Michigan Workers' Disability Compensation Act, providing:

> An employee who is unable to work as a result of an injury arising out of and in the course of his employment with the Company and covered by the Michigan Workers' Disability Compensation Act and/or the Michigan No-Fault Automobile Insurance Act, shall be paid supplemental pay, in addition Workers' Disability Compensation weekly payments and/or no-fault wage payments from or on behalf of the Company. The employee's supplemental pay shall equal an amount such that the total payment after taxes (Workers' Compensation, no-fault wage payments plus supplemental pay) to the employee will not exceed 90% of 40 hours of his straight time rate. . . .
>
> Such pay will begin from the first day of the total disability. Eligibility for such pay will terminate upon the payment of supplemental pay for a total of 52 weeks or the expiration of a 400-week period commencing as of the date of the injury and which caused the disability, whichever occurs first.

*Id*. art. 13, § 3 (paragraph break supplied).

## C

As noted, Plaintiff began receiving workers' compensation benefits on February 8, 2011. Compl. ¶ 8. About a year passed. On December 22, 2011, Plaintiff emailed a Consumers Energy human resources employee, Alex Fitzpatrick. *See* Consumers Energy's Mot. Ex. C.

"I just wanted to touch base with you again in regards to the confusion on what to do with my remaining vacation," Plaintiff wrote, explaining: "I know that Doug said that he has been in touch with you to see what can be done with my remaining vacation. As it gets closer to the end of the year, I am becoming more concerned that I will lose this earned benefit." *Id*. (The parties do not identify who "Doug" is.)

On January 3, 2012, Fitzpatrick responded that he had spoken with "Doug" to "check in to what was going on with your vacation." *Id*. Fitzpatrick continued:

> Doug wanted to know if there was any way we could put you on vacation for a couple days, so you could meet the requirements of Article XII, Section 4(e). Unfortunately, in talking with Workers Compensation it was not possible to put you on vacation for a couple days in order to avoid you losing any vacation days. Thus, we did roll over 13 days of vacation and you lost the other 10 days.

>Furthermore, you are not eligible for vacation payout until you exhausts [sic] your supplemental pay, which will be next month.[1] Once that happens, you can elect to have a pay out of vacation or wait until December 2012 for the payout — but either way it will be at the supplemental rate.[2] When we put you on Disability Retirement after you exhausts [sic] your supplemental pay in February [2012], your vacation time would be paid out at the supplemental rate at that time and the option to wait until December [2012] would no longer be valid.[3]

*Id*. (paragraph breaks and footnotes supplied).

About three weeks passed. On January 30, 2012, Plaintiff wrote back to Fitzpatrick: "I want to elect to receive my vacation pay (at the supplemental rate) right away instead of waiting until the end of the year as you described in the email." *Id*.

**D**

On March 1, 2012, Plaintiff was placed on disability retirement. The following day, Consumers Energy issued Plaintiff a check containing her vacation allowance payment. *See* Pl.'s Resp. to Consumers Energy's Mot. Ex. C (attaching a copy of check). Consistent with her correspondence with Fitzpatrick, Plaintiff was paid at the supplemental rate ($3.20 per hour) rather than the straight time rate ($30.46 per hour). *See id*.

**E**

On May 9, 2012, Plaintiff filed a grievance with Consumers Energy asserting that her vacation allowance payment should have been paid at the straight time rate, not the supplemental rate. *See* Compl. ¶ 21. Because Plaintiff was no longer an employee, Consumers Energy refused

---

[1] *See* CBA art. 12, § 4(g) ("At the time an employee exhausts his supplemental pay benefits in accordance with the provisions of Article XIII, he will be given the following options for any unused portion of the vacation to which he would be entitled if he were working . . . (1) To be paid an allowance at such time, or (2) The employee may elect to defer being paid the allowance to a later time in the calendar year in which he exhausts his supplemental pay.").

[2] *See id*. ("The rate of pay used to calculate such an allowance will be the supplemental pay the employee was receiving in accordance with the provisions of Article XIII, Section 3.").

[3] *See id*. art. XIII, § 3 ("Eligibility for [supplemental] pay will terminate upon the payment of supplemental pay for a total of 52 weeks"); *id*. art. XII, § 4(g) (noting that an employee can elect to either receive vacation pay immediately or defer being paid until "he exhausts his supplemental pay").

to hear the grievance. *Id.* ¶ 22. Local 129 "did not pursue matter further for Plaintiff." *Id.* ¶ 23. So Plaintiff went to court.

### F

On August 30, 2012, Plaintiff filed a two-count complaint against Defendants in Michigan state court. Count one asserts that Consumers Energy breached the collective bargaining agreement by not paying Plaintiff's vacation allowance payment at the straight time rate. Count two asserts that Local 129 breached its duty of fair representation by not pursuing Plaintiff's grievance against Consumers Energy. Both counts seek the same damages: the difference between the straight time pay and supplemental pay rates, which Plaintiff calculates as $8,287.04.

Defendants removed the case to this Court. Consumer Energy now moves to dismiss or, alternatively, for summary judgment. ECF No. 6. Because the summary judgment motion is dispositive, it is taken up first.

### II

A motion for summary judgment should be granted if the "movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must view the evidence and draw all reasonable inferences in favor of the non-movant and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986) (citation omitted).

## III

### A

Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a), confers jurisdiction on federal district courts to hear cases concerning alleged breaches of collective bargaining agreement, providing: "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy."

This jurisdictional grant encompasses suits by an employee against her employer for breach of a collective bargaining agreement. *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 562 (1976) ("Section 301 contemplates suits by and against individual employees as well as between unions and employers; and contrary to earlier indications § 301 suits encompass those seeking to vindicate 'uniquely personal' rights of employees such as wages, hours, overtime pay, and wrongful discharge.").

"Ordinarily, however, an employee is required to attempt to exhaust any grievance or arbitration remedies provided in the collective bargaining agreement." *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 163 (1983) (citing *Republic Steel Corp. v. Maddox*, 379 U.S. 650 (1965)). Yet, the Supreme Court cautions, requiring exhaustion is problematic when the plaintiff alleges not only an employer's breach of the collective bargaining agreement, but also the union's duty of fair representation. *See id*. Because part of the plaintiff's allegation is that the process itself has broken down — "the union representing the employee in the grievance/arbitration procedure . . . [has] breach[ed] its duty of fair representation" — requiring exhaustion would work "an unacceptable injustice." *DelCostello*, 462 U.S. at 164. "In such an instance," the Court therefore instructs, "an employee may bring suit against both the employer

and the union, notwithstanding the outcome or finality of the grievance or arbitration proceeding." *Id*.

These are "hybrid" actions, the Court elaborates, because the two causes of action are "inextricably interdependent":

> Such a suit, as a formal matter, comprises two causes of action. The suit against the employer rests on § 301, since the employee is alleging a breach of the collective bargaining agreement. The suit against the union is one for breach of the union's duty of fair representation, which is implied under the scheme of the National Labor Relations Act. Yet the two claims are inextricably interdependent. To prevail against either the company or the Union, employee-plaintiffs must not only show that their discharge was contrary to the contract but must also carry the burden of demonstrating a breach of duty by the Union.

*DelCostello*, 462 U.S. at 164–65 (quotation marks, ellipses, brackets, and footnote omitted) (quoting *United Parcel Serv., Inc. v. Mitchell*, 451 U.S. 56, 66–67 (1981) (Stewart, J., concurring)).

The statute of limitations for such hybrid actions, the Supreme Court further instructs, is six months. *DelCostello*, 462 U.S. at 172 (citing 29 U.S.C. § 160(b)).

In the Sixth Circuit, the "claim accrues when the claimant discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged violation." *Fox v. Parker Hannifin Corp.*, 914 F.2d 795, 803 (6th Cir. 1990) (quotation marks omitted) (quoting *Chrysler Workers Ass'n v. Chrysler Corp.*, 834 F.2d 573, 581 (6th Cir. 1987)).

Here, the asserted breach of the collective bargaining agreement is Consumers Energy paying Plaintiff's vacation allowance payment at the supplemental rather than the straight time rate. Consumers Energy notified Plaintiff that she would be paid at this rate on January 3, 2012. Plaintiff responded (in fact, agreed) to this on January 30, 2012. Eight months passed. On August 30, 2012, Plaintiff filed suit. Because she did not file suit within six months of

discovering the alleged violation of the collective bargaining agreement, her claim is barred by the statute of limitations. Consumers Energy is entitled to summary judgment.

**B**

Against this conclusion, Plaintiff makes two arguments. Neither has merit.

**1**

First, Plaintiff asserts that the applicable limitations period is not six months, but six years. Noting that the collective bargaining agreement "is a written contract detailing the terms of employment," Plaintiff asserts: "Because this is a contract dispute, the most analogous state limitations period is Michigan's 6 year limitations period for actions on contract." Pl.'s Resp. 10. In support, Plaintiff quotes a Sixth Circuit decision observing "that there is no generally applicable limitations period for Section 301 claims." *Id*. at 9 (quoting *Anderson v. AT&T Corp.*, 147 F.3d 467, 474 (1998)).

Plaintiff's quotation is accurate. But her reliance on *Anderson* is misplaced. There, AT&T employees alleged a breach of the collective bargaining agreement against their employer. 147 F.3d at 472. Crucially, however, they did not sue their union for breach of the duty of fair representation. *Id*. In fact, the union was not even a party to the suit. *Id*. Thus, the suit was a straightforward breach of contract action (under a third-party beneficiary theory) against the employer — not a "hybrid" action. *Id*. at 473.

This case, in contrast, is a hybrid action. As noted, *DelCostello* instructs that the applicable limitations period for such actions is six months. Plaintiff's claim that a longer statute of limitations should apply lacks merit.

**2**

Next, Plaintiff argues that even if the six month limitation period applies her claim is timely. She writes that she "did not actually know what the supplemental rate included until she

-10-

received the vacation allowance payment on or around March 2, 2012. . . . Plaintiff believed that the supplemental rate that she had been told she would receive her vacation allowance at was the rate listed of $30.46 on the check stub [that is, Plaintiff's straight time rate of pay]." Pl.'s Resp. 10.

Essentially, Plaintiff is asserting that she confused her "straight-time rate" with the supplemental rate. Drawing all reasonable inferences in her favor, Plaintiff may not have actually known that the supplemental rate was lower than the straight time rate. *But see* Consumers Energy's Mot. Ex. C (attaching email chain between Plaintiff and Fitzpatrick in which Plaintiff agrees to receive her vacation allowance at "the supplemental rate" rather than "the regular rate").

Even if Plaintiff did not actually know that the supplemental rate was lower than the actual rate, however, she should have. The collective bargaining agreement spells it out. *See* CBA Art. 13, § 3. Fitzgerald's email to Plaintiff spells out that she would be paid at her vacation allowance at "the supplemental rate" not "the regular rate." Consumers Energy's Mot. Ex. C. And Plaintiff acknowledges that her supplemental rate was in fact $3.20. Compl. ¶ 17.

As noted, "a section 301 claim accrues when the claimant discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged violation." *Parker Hannifin Corp.*, 914 F.2d at 803. Even if Plaintiff did not actually know that the supplemental rate was not the same as the straight line rate, if she had exercised reasonable diligence, she would have. Plaintiff's claim is time barred.

## IV

Accordingly, it is **ORDERED** that Defendant Consumer Energy's motion to dismiss or for summary judgment (ECF No. 6) is **GRANTED**.

It is further **ORDERED** that the complaint against Defendant Consumer Energy is **DISMISSED**.

Dated: February 5, 2013

                                                    s/Thomas L. Ludington
                                                    THOMAS L. LUDINGTON
                                                    United States District Judge

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on February 5, 2013.

                              s/Tracy A. Jacobs
                              TRACY A. JACOBS