UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

KAREN JAYNES,

    Plaintiff,

v.                                                       Case Number 12-14304
                                                            Honorable Thomas L. Ludington

CONSUMERS ENERGY CO. ET AL.,

    Defendants.
_____/

**OPINION AND ORDER GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

In this labor dispute, Plaintiff Karen Jaynes brought suit against her former employer, Defendant Consumers Energy, and union, the Utility Workers of America, AFL-CIO Local Union 129. The two-count complaint alleges that Consumers Energy breached the collective bargaining agreement and that Local 129 breached its duty of fair representation. In February 2013, summary judgment was entered in Consumers Energy favor. *Jaynes v. Consumers Energy Co.*, 12-14304, 2013 WL 441135 (E.D. Mich. Feb. 5, 2013). The union now moves for summary judgment. For the following reasons, it is entitled to it.

**I**

**A**

Plaintiff began working for Consumers Energy 32 years ago. Compl. ¶ 5. During her employment, she was a member of the Utility Workers of America, AFL-CIO Local Union 129. *See id.* ¶ 3.

**B**

Plaintiff's employment was governed by a collective bargaining agreement. The agreement in effect when she was injured was titled "Working Agreement June 1, 2010 to June 1, 2015" ("CBA"). Compl. ¶ 4; *see* Pl.'s Resp. to Union's Mot. Ex. A (attaching CBA). Two particular articles of the CBA — articles XII and XIII — are at issue in this case. Article XII, section 4 provides:

> Allowances in lieu of vacations shall be governed by the following rules:
>
> (a) At the time an employee quits, is released for lack of work, is placed on leave of absence to perform military service and he is not expected to return to work from such leave before the end of the calendar year, retires, during a year in which he works or receives sick benefits or supplemental pay or is discharged during the calendar year under consideration, he will be paid an allowance for any unused vacation to which he would be entitled if he were working, including any vacation deferred in accordance with Section 3 and 9 of Article 12.
>
> . . .
>
> (f) The rate of pay used to calculate the allowances in Subsection (a) . . . will be an employee's regular straight-time rate.
>
> (g) At the time an employee exhausts his supplemental pay benefits in accordance with the provisions of Article XIII, he will be given the following options for any unused portion of the vacation to which he would be entitled if he were working . . .
>
> (1) To be paid an allowance at such time, or
>
> (2) The employee may elect to defer being paid the allowance to a later time in the calendar year in which he exhausts his supplemental pay. If an employee exercises this option and returns to work prior to December 1 of the calendar year, he may take his vacation subject to all the provisions of this Article. If the employee does not return to work prior to December 1, the employee will be paid an allowance for his unused vacation at the supplemental rate. . . . The rate of pay used to calculate such an allowance will be the supplemental pay the employee was receiving in accordance with the provisions of Article XIII, Section 3.

CBA Art. 12, § 4(a), (f), (g). Article XIII, section 3, provides:

> An employee who is unable to work as a result of an injury arising out of and in the course of his employment with the Company and covered by the Michigan Workers' Disability Compensation Act and/or the Michigan No-Fault Automobile Insurance Act, shall be paid supplemental pay, in addition Workers' Disability Compensation weekly payments and/or no-fault wage payments from or on behalf of the Company. The employee's supplemental pay shall equal an amount such that the total payment after taxes (Workers' Compensation, no-fault wage payments plus supplemental pay) to the employee will not exceed 90% of 40 hours of his straight time rate. . . . Such pay will begin from the first day of the total disability. Eligibility for such pay will terminate upon the payment of supplemental pay for a total of 52 weeks or the expiration of a 400-week period commencing as of the date of the injury and which caused the disability, whichever occurs first.

*Id*. Art. 13, § 3.

**C**

In early 2011, Plaintiff was injured on the job. *See* Compl. ¶ 6. In February 2011, she began receiving workers' compensation payments. *Id*. At the time, her "straight-time" rate of pay was $30.46 per hour; her "supplemental rate" was $3.20 per hour. *Id*. ¶¶ 11, 17. She had accrued 304 vacation hours. *Id*. ¶ 9.

About a year passed. On December 22, 2011, Plaintiff emailed a Consumers Energy human resources employee, Alex Fitzpatrick. *See* Consumers Energy Mot. Summ. J. Ex. C (attaching email chain).

"I just wanted to touch base with you again in regards to the confusion on what to do with my remaining vacation," Plaintiff wrote, explaining: "I know that Doug said that he has been in touch with you to see what can be done with my remaining vacation. As it gets closer to the end of the year, I am becoming more concerned that I will lose this earned benefit." *Id*. (The parties did not identify who "Doug" is.)

On January 3, 2012, Fitzpatrick responded that he had spoken with Doug to "check in to what was going on with your vacation." *Id*. Fitzpatrick continued:

> Doug wanted to know if there was any way we could put you on vacation for a couple days, so you could meet the requirements of Article XII, Section 4(e). Unfortunately, in talking with Workers Compensation it was not possible . . . . Thus, we did roll over 13 days of vacation and you lost the other 10 days. Furthermore, you are not eligible for vacation payout until you exhausts [sic] your supplemental pay, which will be next month. Once that happens, you can elect to have a pay out of vacation or wait until December 2012 for the payout — but either way it will be at the supplemental rate. When we put you on Disability Retirement after you exhausts [sic] your supplement pay in February [2012], your vacation time would be paid out at the supplemental rate at that time and the option to wait until December [2012] would no longer be valid. Accrued vacation would be the only vacation paid out at the regular rate (but it would only be the accrued time from Jan–Feb.).

*Id*. About three weeks passed. On January 30, 2012, Plaintiff wrote back to Fitzpatrick: "I want to elect to receive my vacation pay (at the supplemental rate) right away instead of waiting until the end of the year as you described in the email." *Id*.

**D**

On March 1, 2012, Plaintiff was placed on disability retirement. The following day, Consumers Energy issued Plaintiff a check containing her vacation allowance payment. Consistent with her correspondence with Fitzpatrick, Plaintiff was paid at the supplemental rate ($3.20 per hour) rather than the straight-time rate ($30.46 per hour).

**E**

On May 9, 2012, Plaintiff filed a grievance with Consumers Energy. Compl. ¶ 21. Because Plaintiff was no longer an employee, Consumers Energy refused to hear the grievance. *Id*. ¶ 22. Local 129 did not pursue the matter for Plaintiff. *Id*. ¶ 22. So Plaintiff went to court.

**F**

On August 30, 2012, Plaintiff filed a two-count complaint against Defendants in Michigan state court. Count one asserts that Consumers Energy breached the collective bargaining agreement by not paying Plaintiff's vacation allowance payment at the straight time

rate. Count two asserts that Local 129 breached its duty of fair representation by not pursuing Plaintiff's grievance against Consumers Energy. Both counts seek the same damages: the difference between the straight time pay and supplemental pay rates ($8,287.04).

Defendants removed the case to this Court. In October 2012, Consumers Energy moved for summary judgment. The motion was granted. *Jaynes v. Consumers Energy Co.*, 12-14304, 2013 WL 441135 (E.D. Mich. Feb. 5, 2013). The union now moves for summary judgment.

## II

A motion for summary judgment should be granted if the "movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of identifying where to look in the record for evidence "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the opposing party who must "set out specific facts showing a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (citation omitted). The court must view the evidence and draw all reasonable inferences in favor of the non-movant and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52.

## III

Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a), confers jurisdiction on federal district courts to hear cases concerning alleged breaches of collective bargaining agreement, providing: "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this

chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy."

When an employee alleges that his employer breached the collective bargaining agreement and the union breached its duty of fair representation, the case is referred to as a "hybrid action." *DelCostello v. Int'l Bhd. of Teamsters,* 462 U.S. 151, 163–65 (1983); see generally *Jaynes v. Consumers Energy Co.*, 12-14304, 2013 WL 441135, at *5 (E.D. Mich. Feb. 5, 2013) (discussing hybrid actions).

To recover against the union, an employee must establish both that the employer breached the collective bargaining agreement and that the union breached its duty of fair representation. *Bagsby v. Lewis Bros., Inc. of Tenn.*, 820 F.2d 799, 801 (6th Cir. 1987) (citing *Hines v. Anchor Motor Freight Co.*, 424 U.S. 554, 570–71 (1976)).

Here, for reasons detailed below, Plaintiff does not make the first showing. Accordingly, the union did not breach its duty of fair representation because any grievance that it would have pursued on Plaintiff's behalf would have been futile.

### A

"The enforcement and interpretation of collective bargaining agreements is governed by traditional rules of contract interpretation as long as their application is not inconsistent with federal labor policy." *Armistead v. Vernitron Corp.*, 944 F.2d 1287, 1293 (6th Cir. 1991) (citing *Int'l Union, United Auto., Aerospace, and Agric. Implement Workers of Am. (UAW) v. Yard-Man, Inc.*, 716 F.2d 1476, 1479 (6th Cir. 1983)).

Accordingly, the Sixth Circuit instructs that a court "should first look to the explicit language of the agreement to determine, if possible, the clear intent of the parties." *Id.* When doing so, "each provision should be construed consistently with the entire document and the

relative positions and purposes of the parties. As in all contracts, the terms of a collective bargaining agreement should be construed so as to render none nugatory." *Id*. (citation omitted). If a provision is ambiguous, "the court may look to other words and phrases in the collective bargaining agreement for guidance."

Here, the question is whether Plaintiff's vacation allowance is governed by subsections (a) and (f) of Article XII, section 4, or by subsection (g). If the former, Consumers Energy breached the CBA. If the latter, it did not.

### 1

Before those subsections can be properly interpreted, however, attention must be given to the "supplemental pay" provision of Article XIII, section 3. That section establishes that an employee injured on the job and receiving workers compensation benefits is also entitled to supplemental pay. Specifically, Consumers Energy will supplement the injured employee's workers compensation benefits so that the total compensation will be up to "90% of 40 hours of his straight time rate." CBA Art. 13, § 3. The CBA further provides: "Such pay will begin from the first day of the total disability. Eligibility for such pay shall terminate upon the payment of supplemental pay for a total of 52 weeks." *Id*.

But, as detailed below, this employment benefit comes with a cost. If an employee uses all 52 weeks of supplemental pay and does not return to work, the employee's allowance for unused vacation time is reduced from the straight-time rate to the supplemental rate.

### 2

Subsection (a), as noted, provides in pertinent part: "At the time an employee . . . retires, during a year in which he works or receives sick benefits or supplemental pay . . . he will be paid an allowance for any unused vacation." CBA Art. 12, § 4(a). Subsection (f), in turn, provides:

"The rate of pay used to calculate the allowances in Subsection (a) . . . will be an employee's regular straight-time rate." *Id*. § 4(f).

Thus, as a general matter an employee who retires with accrued vacation time is entitled to be paid at the straight-time rate.

Subsection (g), however, creates an exception to this general rule for employees who have exhausted their supplemental pay benefit, providing:

> (g) At the time an employee exhausts his supplemental pay . . . he will be given the following options for any unused portion of the vacation to which he would be entitled if he were working . . .
>
> (1) To be paid an allowance at such time, or
>
> (2) The employee may elect to defer being paid the allowance to a later time in the calendar year in which he exhausts his supplemental pay. If an employee exercises this option and returns to work prior to December 1 of the calendar year, he may take his vacation subject to all the provisions of this Article. If the employee does not return to work prior to December 1, the employee will be paid an allowance for his unused vacation at the supplemental rate. . . . The rate of pay used to calculate such an allowance will be the supplemental pay the employee was receiving.

CBA Art. 12, § 4(g). Though perhaps not a model of precise drafting, the import of these subsections is plain.

Generally, a retiring employee is entitled to be paid for unused vacation time at the straight-time rate. But if the employee has drawn 52 consecutive weeks of supplemental pay and has not returned to work, the vacation benefit is reduced. Instead of being paid at the straight-time rate, the employee is paid at the supplemental pay rate. And whatever the reason for this different treatment, there is no suggestion that it is inconsistent with federal labor policy.

Plaintiff, as noted, became disabled in February 2011. She then received 52 consecutive weeks of supplemental pay from Consumers Energy. As that year was coming to an end, she wrote to one of Consumers Energy's agents: "I want to elect to receive my vacation pay (at the

supplemental rate) right away instead of waiting until the end of the year as you described in the email."

After the 52 weeks ran, Consumers Energy honored Plaintiff's election and paid her the vacation benefit at the supplemental rate. Doing so did not breach the CBA, and so the union is entitled to judgment as a matter of law.

**B**

Arguing against this conclusion, Plaintiff asserts that the CBA, "when read as a whole, entitles her to her vacation allowance at her regular straight line rate of pay." Pl.'s Resp. 11. She elaborates: "If Karen was not intended to be covered by Article XII, Section 4(a), it would not have the line pertaining to employees who 'retires, during a year in which he works or receives sick benefits or supplemental pay.' Karen obviously fits within this category and is therefore entitled to the higher payout she is owed." *Id.* at 11–12 (internal citation and emphasis omitted).

Plaintiff's quotation to the CBA is accurate — but incomplete. Subsection (a) does indeed provide that an employee who "retires, during a year in which he works or receives sick benefits or supplemental pay" is entitled to a vacation allowance at the higher rate.

But subsection (g) specifies that if "an employee exhausts his supplemental pay" and does not return to work the vacation allowance is reduced to the lower rate. Thus, simply receiving some supplemental pay is not sufficient to trigger the lower rate; exhausting the supplemental pay benefit is necessary. And that is what happened to Plaintiff. The CBA was not breached.

Further arguing against this conclusion, Plaintiff writes that applying subsection (g) "would make the terms of Section 4(a) nugatory, specifically, the phrase: 'retires, during a year

in which he works or receives sick benefits or supplemental pay.'" *Id*. at 13 (ellipsis omitted). She reasons that under the union's "interpretation, any employee that received supplemental pay during the year that they retired would cause their allowance to be calculated based on their supplemental pay thus making Section 4(a) nugatory."

As noted, contrary to Plaintiff's assertion, simply receiving supplemental pay is not sufficient to trigger subsection (g). For that subsection to apply, the employee must exhaust the supplemental pay benefit. Here, Plaintiff did exhaust her supplemental pay benefit. Paying her at the lower rate did not breach the CBA. Consequently, the union did not breach its duty of fair representation because any grievance that it would have pursued on Plaintiff's behalf would have been futile.

## IV

Accordingly, it is **ORDERED** that Defendant's motion for summary judgment (ECF No. 16) is **GRANTED**.

It is further **ORDERED** that Plaintiff's motion to compel discovery (ECF No. 20) is **DENIED AS MOOT**.

Dated: May 31, 2013

          s/Thomas L. Ludington
          THOMAS L. LUDINGTON
          United States District Judge

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on May 31, 2013.

          s/Tracy A. Jacobs
          TRACY A. JACOBS